UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:05CV-190-M

GEORGE C. COMBS
MARY COMBS                                                                                       PLAINTIFFS

V.

T.J. SAMSON COMMUNITY HOSPITAL,
GILMAN PETERSON, M.D.,
PAUL BUNN, M.D.,
GILMAN PETERSON, JR., M.D., P.S.C.                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a joint motion to dismiss [DN 8] by Defendants, Gilman Peterson, M.D.; Paul Bunn, M.D.; and Gilman Peterson, Jr., M.D., P.S.C., to dismiss this action for lack of subject matter jurisdiction. Also before the Court is a motion to dismiss by T.J. Samson Community Hospital [DN 9]. Fully briefed, this matter stands ripe for decision. For the following reasons, Defendants' Motions to Dismiss are **GRANTED**.

### I. BACKGROUND

This case arises out of a medical negligence action brought by Plaintiff, George C. Combs[1] ("Mr. Combs"), against Defendants, T.J. Samson Community Hospital; Gilman Peterson, M.D.; Paul Bunn, M.D.; and Gilman Peterson, Jr., M.D., P.S.C. In his Complaint, Mr. Combs asserts that he and his wife, Mary Combs ("Mrs. Combs"), are Florida

---

[1] George's wife, Mary Combs, also brings a cause of action against the Defendants for loss of consortium and companionship.

domiciliaries. The Defendants are Kentucky domiciliaries and the amount in controversy requirement has been met. Defendants filed a motion to dismiss, claiming that the Mr. Combs was a Kentucky domiciliary and, therefore, not diverse. The Court granted the Defendants' request for further discovery, which yielded the following facts.

The Combses are lifelong friends who have known each other since their childhood in Kentucky. Mr. Combs is now 60 years old and Mrs. Combs is now 68 years old. Mrs. Combs moved to Illinois as a young woman and later moved to Florida in 1966. She has been a domiciliary of Florida since that time. Even though she moved to Florida while Mr. Combs stayed in Kentucky, they remained in contact. Mr. Combs was also friends with Mrs. Combs' father. In fact, after Mr. Combs' home in Barren County, Kentucky burned down in approximately 1995, he lived with Mrs. Combs' father at his home in Monroe County, Kentucky.

Since about 1990, Mr. Combs, along with Mrs. Combs' father, would make trips to Florida to visit with Mrs. Combs and her extensive family.[2] The Combses were eventually married in Florida on September 6, 2000. Mrs. Combs claims that she agreed to marry Mr. Combs on two conditions: that he stop drinking and that he move to Florida. In January of 2001, Mrs. Combs' father passed away and she and Mr. Combs inherited his home in Monroe County, Kentucky.

While Mr. Combs took up a residence in Florida with Mrs. Combs, he retained many

---

[2] Both Plaintiffs had been married to other individuals before their marriage to each other in 2000. Mr. Combs had been married four other times.

Kentucky contacts, though he disputes the relevance of those contacts. Mr. Combs kept his Kentucky mailing address in Barren County claiming that he was concerned about the potential effect that a change of address might have on his receipt of Social Security checks. He made a similar claim as to why he maintained his bank account in Kentucky. He also notes that he had two or three insurance policies which were paid for by automatic bank draft at his Kentucky bank, and that he did not want to disrupt those payments. Mr. Combs used his ATM card forty-four times from March 26, 2001 through January 15, 2004. However, only one of those forty-four transactions occurred in Kentucky. Mr. Combs did not belong to any clubs or social organizations, but he was a member of Dover Baptist Church in Monroe County, Kentucy. He testified, however, that he seldom attended church during the course of his life.

Mr. Combs was registered to vote in Kentucky, but he claims that he never voted anyway. He possessed a valid Kentucky's driver's license. He contends that he did not obtain a Florida driver's license because he was under the mistaken impression that he would have had to take a driver's test to do so. The Combses no longer own any real property in the state of Florida, but Mr. Combs still technically owns property in Barren County and paid taxes on it as recently as March of 2006.[3] Mr. Combs had agreed to sell the property to his friend, Danny Wood ("Mr. Wood"), in 2001, but the agreement was informal, and Mr. Combs has not yet executed the deed to Mr. Wood. In fact, the property tax bill from the

---

[3]The Combses now reside in a mobile park home in Florida.

Barren County, Kentucky PVA's office lists Mr. Combs as the record title owner of the property, a fact to which Mr. Wood has testified. In August of 2004, Mr. Combs traded in his straight-shift vehicle with Florida tags for an automatic vehicle with Kentucky tags. Mr. Combs claims he registered the new vehicle in Kentucky because he was told that he could not register the vehicle in Florida.

The Combses made a trip to Kentucky in February of 2004. While in Kentucky, Mrs. Combs was told that her deceased father's property would sell better if she finished out the basement. Mr. Combs aided her in this project, which led to cramping in his leg. By November of 2004, Mr. Combs needed surgery. At the time of his surgery, and during follow-up visits, Mr. Combs listed a Kentucky address on the medical forms. Mr. Combs has suffered terrible complications from the surgery, which form the basis for this action.

In the Fall of 2005, the Combses were finally able to return to Florida. On November 8, 2005, the Combses filed the instant Complaint. After the Plaintiffs filed their Complaint, Mr. Combs obtained a Florida driver's license, registered to vote in Florida, opened a bank account in Florida, and registered his vehicle in Florida.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir.1996), cert. denied, 520 U.S. 1251 (1997). A judge

may not grant a Fed. R. Civ. P. 12(b)(6) motion based on a disbelief of a complaint's factual allegations. Wright v. MetroHealth Medical Center, 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996). A Fed. R. Civ. P. 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994).

The standard of review requires that a plaintiff plead more than bare legal conclusions. Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir.1996). The complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Gazette, 41 F.3d at 1064. "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Lillard, 76 F.3d at 726 (citation omitted). In deciding a motion to dismiss, the Court may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken. Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir.1995).

### III. DISCUSSION

The issue before the Court at this stage in the litigation is simply the domicile of Mr. Combs. If Mr. Combs is a Kentucky domiciliary, as Defendants contend, then the Court does not have jurisdiction over this matter as diversity would not exist. If Combs can show that he is a Florida domiciliary, then the Court has jurisdiction.

Citizenship and domicile are essentially synonymous for purposes of diversity jurisdiction. Mallon v. Lutz, 217 F.Supp. 454, 455 (E.D. Mich. 1963). Although citizenship

and domicile are equivalent for the purpose of determining federal diversity jurisdiction, domicile and residence are distinct concepts. Stifel v. Hopkins, 477 F.2d 1116, 1120 (6th Cir. 1973). While an individual may have more than one residence, he or she may only have one domicile. Hill v. City of Scranton, 411 F.3d 118, 128 (3d Cir. 2005). "Citizenship" for purposes of the diversity statute is determined as of the date of commencement of the action. Smith v. Sperling, 354 U.S. 91, 93 n. 1 (1957).

A change in domicile requires both the concurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere." Bateman v. E.I. DuPont de Nemours & Co., 7 F. Supp. 2d 910, 911 (E.D. Mich. 1998). "Either without the other is insufficient." Sun Printing & Publishing Ass'n v. Edwards, 194 U.S. 377, 383 (1904). Once domicile is established in one state, it is presumed to continue in existence, even if the party leaves that state, until the adoption of a new domicile is proven. Id. A protracted absence from one's domicile does not establish a new domicile." Seaboard Fin. Co. v. Davis, 276 F.Supp. 507, 510 (N.D.Ill. 1976). Once a party's allegations of diversity are challenged, that party must prove by a preponderance of the evidence that diversity in fact exists. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

In determining one's domicile, courts examine a number of factors, including, but not limited to, voting registration, location of real and personal property, location of bank accounts, involvement in churches and other social organizations, driver's licenses, automobile registration, and representation of one's address. Lundquist v. Precision Valley

Aviation, Inc., 946 F.2d 8 (1st Cir. 1991). While residence is also significant, it is not determinative. Mallon, 217 F.Supp. at 456. Just as no single factor is controlling, domicile need not be determined by mere numerical comparison of the number of factors that may appear to favor each side of the issue. Precision Valley Aviation, Inc., 946 F.2d at 12.

A plaintiff's self-serving declarations of intent cannot alone suffice to establish another domicile when objective evidence, such as vehicle and voter registration, support the conclusion that plaintiff had not established a new domicile. Mallon, 217 F.Supp. at 456. This is true because while one's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted by an inconsistent course of conduct. Korn v. Korn, 398 F.2d 689, 691 (3d Cir. 1968). Similarly, in Bevilaqua v. Bernstein, 642 F.Supp. 1072, 1074-75 (S.D.N.Y.1986), the Court found that the plaintiff could not prove that he had established domicile in Virginia when the objective evidence showed that he had not taken a job there, paid state income taxes there, registered to vote there, or obtained a driver's license there. See also Audi Performance & Racing, LLC v. Kasberger, 273 F. Supp. 2d 1220, 1227 (M.D. Ala. 2003) (concluding that subjective expressions of intent did not suffice to establish domicile when weighed against inconsistent acts and established facts); Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 52 (1st Cir. 1992) (finding that residence alone, when contradictory objective evidence existed to the contrary, did not suffice to prove domicile by a preponderance of the evidence).

Here, Mr. Combs' claim that he is a Florida domiciliary ultimately fails because there

is little objective evidence to corroborate his subjective statement that he became a Florida domiciliary at the time of his marriage to Mrs. Combs. The Court has considered his testimony but ultimately finds that the numerous objective and traditional indicators of domicile strongly support the Defendants' position. Basically all of the traditional indicators of domicile suggest that Mr. Combs had not changed his domicile at the time he and his wife filed their Complaint.[4]

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss [DN 8] and [DN 9] are **GRANTED**.

copies to: counsel of record
05cv-190Combs(2)

---

[4] Mr. Combs' conduct after the filing of the Complaint on November 8, 2005 is irrelevant for purposes of this determination.